IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARMEN FRED-PEREZ, on behalf of Y.F.-F., a minor, <br><br> Plaintiff, <br><br> v. <br><br> JO ANNE B. BARNHART, Commissioner, Social Security Administration, <br><br> Defendant. | ) ) ) ) ) ) ) ) Civ. No. 05-0459-SLR ) ) ) ) ) ) ) ) ) |

MaryBeth Musumeci, Esquire, Disabilities Law Program, Community Legal Aid Society, Inc., Wilmington, Delaware. Counsel for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, of the United State's Attorney's Office, Wilmington, Delaware. Counsel for Defendants. Of Counsel: David F. Chermol, Esquire, Special Assistant United States Attorney for the District of Delaware, Donna L. Calvert, Esquire, Regional Chief Counsel, of the Office of the General Counsel of the Social Security Administration, Philadelphia, Pennsylvania.

**MEMORANDUM OPINION**

Dated: September 27, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Presently before the court is an appeal pursuant to 42 U.S.C. § 1383(c) filed by plaintiff, Carmen Fred-Perez, on behalf of her minor child, Y.F.-F., seeking review of the final decision of defendant, Jo Anne B. Barnhart, Commissioner of the Social Security Administration (the "Commissioner"), denying Y.F.-F.'s application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f). Plaintiff has filed a motion for summary judgment (D.I. 15) requesting the court to reverse the decision of the Commissioner and remand this matter for a new administrative hearing. Defendant has filed a cross-motion for summary judgment (D.I. 13) requesting the court to affirm the Commissioner's decision. For the reasons set forth below, defendant's cross-motion for summary judgment will be denied, and plaintiff's motion for summary judgment will be granted. The decision of the Commissioner dated February 22, 2005, will be reversed and remanded for further findings and/or proceedings consistent with this memorandum opinion.

## II. PROCEDURAL BACKGROUND

On January 10, 2003, plaintiff filed an application for SSI on behalf of her son, alleging disability since January 4, 2002, as a result of respiratory impairment and reflux disease. (D.I. 11 at 48-52)  Plaintiff's application was denied initially and

upon reconsideration. (Id. at 20-28) Plaintiff filed a request for an administrative hearing before an Administrative Law Judge ("A.L.J."), and the A.L.J. held a hearing on October 18, 2004. (Id. at 391-406)

On February 22, 2005, the A.L.J. issued a decision denying the claim for SSI made by plaintiff on her son's behalf. (Id. at 15-25) Plaintiff requested a review of the decision by the Appeals Council, but the Appeals Council denied her request for review. (Id. at 5) Accordingly, the A.L.J.'s February 22, 2005 decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, plaintiff filed the instant civil action on behalf of her son, pursuant to 42 U.S.C. § 1483(c), seeking review of the A.L.J.'s decision denying her son's claim for SSI. In response to the complaint, defendant filed an answer (D.I. 9) and the transcript (D.I. 11) of the proceedings at the administrative level.

The docket reflects that defendant initiated briefing in this case with the filing of a cross-motion for summary judgment and a brief entitled "Defendant's Brief In Opposition To Plaintiff's Motion For Summary Judgment And In Support Of Her Cross-Motion For Summary Judgment." (D.I. 13, 14) Plaintiff then filed her motion for summary judgment and opening brief. (D.I. 15, 16) Shortly thereafter, the plaintiff submitted a

letter informing the court that neither side would be filing any reply briefs. (D.I. 17) Therefore, this matter is fully briefed and ripe for the court's review.

## III. FACTUAL BACKGROUND

### A. Y.F.-F.'s Medical History, Condition and Treatment

At the time the A.L.J. issued his decision in this case, plaintiff's son, Y.F.-F., was three years old. (D.I. 11 at 14) Y.F.-F. was born prematurely on January 4, 2002, at thirty-four weeks gestationally, and was hospitalized for seven days. During that time period, Y.F.-F.'s initial feeding intolerance and hypocalcemia resolved. Sepsis was also ruled out four days after his birth. (Id. at 230-232, 108)

Y.F.-F. received routine infant care from his doctors at the Wilmington Hospital Health Center through the Christiana Care Pediatric Practice Program. Prior to his first birthday, Y.F.-F. presented with respiratory problems, gastrointestinal reflux and ear problems. Y.F.-F. was treated with albuterol medication for his respiratory ailments, reflux medication and a variety of different baby formulas for his gastrointestinal difficulties, and antibiotics for his ear infections. (Id. at 137-217)

On December 21, 2002, a few weeks before his first birthday, Y.F.-F. was brought to the emergency room at DuPont Hospital for Children. Y.F.-F. had a persistent cough, vomiting, nasal congestion, increased tactile temperature and irritability with

frequent night wakings. (Id. at 97-99) Y.F.-F. was diagnosed with a viral illness. Two days later, on December 23, 2002, Y.F.-F. returned to the emergency room with a fever and difficulty breathing. He was hospitalized for two days and treated for RSV+, bronchiolitis, fever, right otitis media (an ear infection), and dehydration. During his hospitalization, Y.F.-F. received intravenous saline, Albuterol nebulizer treatments and oral antibiotics. (Id. at 101-103, 107-108, 233-238)

On March 29, 2003, Y.F.-F. returned to the emergency room with complaints of fever, vomiting, trouble breathing and trouble sleeping. (Id. at 240-241) Y.F.-F. was diagnosed with right otitis media and a viral syndrome. The treating physician prescribed Augmentin and released him.

On August 24 and August 25, 2003, Y.F.-F. was treated at the emergency room for vomiting, fever and mild dehydration. On August 26, 2003, Y.F.-F. returned to the emergency room for vomiting. He was diagnosed with febrile illness with no evidence of acute abdomen or dehydration. (Id. at 373)

On October 6, 2003, Y.F.-F. returned to the emergency room for vomiting. He was diagnosed with left otitis media and tonsillopharyngitis with mild dehydration. He was given Cefzil, and Pedialyte and Gatorade were recommended to hydrate him. (Id. at 243)

Y.F.-F. was hospitalized a third time from October 10, 2003 to October 13, 2003, for vomiting and dehydration. (Id. at 125-127) During his hospitalization he was treated with intravenous saline and oral antibiotics.

On December 4, 2003, Y.F.-F. underwent otitis media surgery, including bilateral myringotmoy and tubes. About two weeks later, Y.F.-F. was seen in the emergency room for "pain and screaming with shaking." (Id. at 263) At that time, Y.F.-F. had a slight runny nose, but no fever and no vomiting. The emergency room physician did not observe any shaking, but concluded that "it does not sound like a seizure." (Id.) Y.F.-F. was released without further treatment.

Six months later, on June 11, 2004, Y.F.-F. was seen in the emergency room for vomiting, diarrhea and fever. He was diagnosed with viral gastroenteritis and discharged the same day. (Id. at 265-266)

On October 11, 2004, Y.F.-F. returned to the emergency room. It was reported that his eyes rolled around and he became dizzy and almost fell. He was playful both before and after the incident. He was admitted to the hospital to determine if he had suffered a seizure, but physicians later ruled out any such seizure, and Y.F.-F. was discharged without restrictions. (Id. at 374-384)

Two state agency physicians completed childhood disability

5

forms for Y.F.-F.. Sandra Hassinh, M.D., completed the first form on March 26, 2003. Dr. Hassinh listed Y.F.-F.'s impairments as recurrent otitis and "former premie." Dr. Hassinh also noted that Y.F.-F. had a prior hospitalization for RSV at eleven months of age, but otherwise noted that he was "growing well." Dr. Hassinh opined that Y.F.-F.'s conditions were not severe. (Id. at 110)

Anne C. Aldridge, M.D., completed a second assessment of Y.F.-F.'s medical records on November 21, 2003. Dr. Aldridge listed Y.F.-F.'s impairments as a respiratory impairment and reflux disease, but opined that these impairments were not severe and Y.F.-F. exhibited "good growth and development." (Id. at 224)

### B. The A.L.J.'s Decision

On October 18, 2004, the A.L.J. conducted a hearing on the SSI application filed by plaintiff on behalf of Y.F.-F. Y.F.-F. attended the hearing with his attorney and plaintiff, who testified on his behalf. (Id. at 391-406) Plaintiff testified that Y.F.-F. had respiratory and reflux problems since birth and that he underwent treatments with a nebulizer machine three times per week. Plaintiff testified that Y.F.-F. needs to be monitored all day because of the way he acts. She said he throws toys around and has grabbed a knife in the past and thrown it at his grandmother. According to plaintiff, Y.F.-F. does not play with

his blocks, but just throws them around. When she goes shopping with Y.F.-F., he takes things off the shelves at the grocery store and throws them around. Plaintiff described Y.F.-F.'s behavior as being unable to sit still and noted that he was easily distracted. Plaintiff also testified that Y.F.-F. does not pay attention when she reads to him and that nothing holds his attention. She stated that "he just wants to play." Plaintiff further testified that at the age of two and a half, Y.F.-F. still trips often when he walks, sometimes for no reason. She also testified that he is learning to talk, but that he cannot tell her when he needs to use the bathroom. Plaintiff testified that Y.F.-F. cries, screams and kicks when she has to leave for work.

At the hearing, the A.L.J. asked if Y.F.-F. were seeing any physicians for emotional difficulties. His mother indicated that he is seen by Dr. Shirley Klein and that she is looking into his condition.

In his February 22, 2005 decision, the A.L.J. found that Y.F.-F. suffered from "resolved respiratory problems and gastro esophageal reflux disorder with occasional vomiting." (Id. at 13-15) The A.L.J. found no evidence of a mental impairment and concluded that Y.F.-F.'s physical impairments were not severe. Specifically, the A.L.J. found that Y.F.-F.'s repeated emergency room visits were prompted by "nonsevere acute problems, rather

than chronic ones." (Id. at 14)

## IV. STANDARD OF REVIEW

Findings of fact made by the Commissioner are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed that "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner]

8

ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## V.   DISCUSSION

### A.   Evaluation Of Childhood Disability Claims

Within the meaning of social security law, a child under the age of 18 is "disabled" for purposes of SSI payments if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(c)(a)(3)(C)(i). To qualify for SSI, the child must demonstrate that:  (1) he or she is not engaged in substantial gainful activity; (2) the child has a medically determinable severe impairment or combination of impairments; and (3) the impairment or combination of impairments meets, medically equals or functionally equals the severity of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listed impairments").

9

### B. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her motion, plaintiff contends that the A.L.J.'s determination that her son's impairments are not severe was not supported by substantial evidence. Specifically, plaintiff contends that the A.L.J. erred in: (1) failing to fully develop the record; (2) failing to consider the combined effects of Y.F.-F.'s impairments; (3) failing to consider all the evidence in the record when determining the severity of Y.F.-F.'s impairments; and (4) failing to articulate a sufficient basis for his credibility findings.

The Court has reviewed the A.L.J.'s decision and concludes that this matter should be remanded for further development of the record. In social security cases, the A.L.J. is charged with the duty to develop a full and fair record. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). Where, as here, evidence of a mental impairment is presented to the A.L.J., every reasonable effort must be made "to ensure that a qualified psychologist or psychiatrist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S. § 421(h). Plaintiff testified that her son did not act in an age appropriate way in a variety of areas including his ability to communicate, concentrate, maintain attention, play appropriately and interact with others. Specifically, plaintiff testified that her son cannot sit still, is easily distracted

even when she tries to engage him, does not pay attention when she reads to him, throws blocks rather than plays with them, does not communicate bowel movements to her, and screams and cries when she leaves for work. See 20 C.F.R. §§ 416.926a(h)(2)(ii) ("As a toddler, you should demonstrate sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on your clothes."); 416.926a(i)(2)(ii) ("At this age [age 1 to 3], you are dependent upon your caregivers, but should begin to separate from them. You should be able to express emotions and respond to the feelings of others"); 416.926a(j)(2)(ii) ("You should begin to walk and run without assistance, and climb with increasing skill. You should frequently try to manipulate small objects and to use your hands to do or get something you want or need.").

The A.L.J. did not discount plaintiff's testimony concerning these developmental areas and, in fact, expressed concern as to whether Y.F.-F. was being evaluated for these conditions. (D.I. 11 at 405) Plaintiff indicated that her pediatrician was assessing these issues (id.), but the A.L.J. did not request further evidence on these issues and did not permit a qualified psychologist or psychiatrist to opine on these issues. The A.L.J. also did not consider this evidence in the context of Y.F.-F.'s other impairments. Further, the A.L.J. offered no explanation for his credibility determinations saying only that

"[t]he subjective complaints are credible only to the extent discussed in the determination." (Id. at 15) Because the A.L.J. did not fully develop the record in this case and did not adequately explain his credibility determinations, the court concludes that it cannot conduct a full and fair review of the A.L.J.'s decision.¹ Accordingly, the court will remand this matter to the A.L.J. for further findings and/or proceedings consistent with this memorandum opinion.

## VI. CONCLUSION

For the reasons discussed, the court will deny defendant's cross-motion for summary judgment and grant plaintiff's motion for summary judgment. The decision of the Commissioner dated February 22, 2005 will be reversed and remanded for further findings and/or proceedings consistent with this memorandum opinion.

An appropriate order will be entered.

---

¹ In making this determination, the court further notes that the most recent state agency physician review of this case was in November of 2003, almost a year and a half prior to the A.L.J.'s decision. While there is no requirement that state agency physicians review the case at the time of the hearing, see Drake v. Barnhart, 2005 WL 3078195, * 6 (E.D. Pa. Nov. 15, 2005) (holding that 42 U.S.C. § 1382c(a)(3)(I) requires an evaluation of each child's case, but it does not mention a hearing level analysis), the court notes that in this case, significant additional medical treatment occurred in the intervening time frame. This evidence may or may not impact the state agency physician's review of Y.F.-F.'s condition; however, the court believes that appropriate development of the record should include consideration of this additional medical treatment by a qualified pediatrician.

12